**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOSEPH ARTHUR UKANOWICZ, | : | |
| Plaintiff | : | |
| | : | No. 3:18-cv-1112- (VLB) |
| v. | : | |
| | : | |
| NICK RODRIGUEZ and | : | June 30, 2021 |
| KEITH LIZON | : | |
| Defendants. | : | |
| | : | |
| | : | |

## MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DKT. 72

Plaintiff Joseph Arthur Ukanowicz ("Ukanowicz" or "Plaintiff"), an individual in the custody of the Connecticut Department of Correction ("DOC"), brought suit against two DOC employees alleging deliberate indifference to his safety under the Fourteenth Amendment because they failed to protect him from an assault by a gang member in December 2017. *See generally* [Dkt. 64-1 (Second. Am. Compl.)].

Defendant Warden Nick Rodriguez ("Warden Rodriguez") and Defendant Captain Keith Lizon ("Capt. Lizon") move for summary judgment on the grounds that Ukanowicz failed to exhaust his administrative remedies. [Dkt. 72-1 (Defs. Mem. in Supp.)]. Warden Rodriguez also argues that the claim against him fails as a matter of law, or, alternatively, that he is subject to qualified immunity. For reasons set forth herein, the Court GRANTS Defendants' Motion for Summary Judgment on all claims because Ukanowicz failed to properly exhaust all available administrative remedies before bringing suit as required by 42 U.S.C. § 1997e(a).

## Preliminary Matters

Before addressing the relevant background information, the Court will address two preliminary issues concerning dispositive motion practice in this case. Pursuant to D. Conn. L. R. Civ. P. 56(a)(2), a party opposing summary judgment must file and serve its response to the movant's statement of material facts with its opposition papers. Plaintiff failed to include his Local Rule 56(a)(2) statement with his opposition papers. Defendants argue that Plaintiff's failure to comply with Local Rule 56(a)(2) warrants deeming the material facts admitted. [Dkt. 80 (Defs. Repl. Br.) at 1-4].

The day after Defendants filed their reply brief, Plaintiff's counsel filed a copy of the Local Rule 56(a)(2) statement and moved for an extension of time *nunc pro tunc*. [Dkts. 81-82]. Plaintiff's counsel, Cody Guarnieri, represented that the Local Rule 56(a)(2) statement was prepared timely but was inadvertently omitted from Plaintiff's opposition papers. [Dkt. 81 (Pl. Mot. for Ext.)]. The Court finds that good cause exists to permit the late filing considering Attorney Guarnieri's prompt attention to his oversight, the absence of any identifiable prejudice to the Defendants, and the public interest in an adjudication on the merits.

For the Defendants' part, the exhibits filed in support of summary judgment do not comply with the District's sealing rules as set forth in D. Conn. L. R. Civ. P. 5(e)(3). That rule provides that: "Every document used by parties moving for or opposing an adjudication by the Court, other than trial or hearing exhibits, shall be filed with the Court. No judicial document shall be filed under seal, except upon

entry of an order of the Court either acting *sua sponte* or specifically granting a request to seal that document." The Defendants unilaterally redacted several exhibits without an order from this Court. *See e.g.* [Dkt. 72-9 (Defs. Ex. G)]; [Dkt. 72-10 (Defs. Ex. H.)]. A footnote in Defendants' memorandum of law for their motion for summary judgment cites generalized safety, security, and privacy concerns as the basis for redacting Exhibit G. [Defs. Mem. in Supp. at 20, n. 2]. This conclusory argument fails to provide the Court with information necessary to make "particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons." Local Rule. 5(e)(3). Absent a basis for making the required finding, the Court lacks the authority to seal the documents requested.

"It is well established that the public and the press have a qualified First Amendment right to . . . access certain judicial documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006). As such, a court may seal a judicial document or a portion thereof only where the movant shows sealing is "essential to preserve higher values and is narrowly tailored to serve that interest." *Matter of N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987). Consequently, and regardless of the disposition of the case, as a courtesy to Defendants and in the interest of resolving the matter on the merits, the Court will allow additional briefing necessary to justify sealing. Within 14 days of this decision, Defendants shall file unredacted copies of the incident reports and a memorandum of law addressing <u>each</u> proposed redaction with applicable Second Circuit precedent. The Court will

then determine whether these records can be maintained under seal. If Defendant fails to meet the deadline, the Clerk is directed to unseal the material.

Nevertheless, given that the dispositive issue in this case is Ukanowicz's failure to exhaust administrative remedies and none of the documents relevant to the exhaustion issue were improperly redacted by defense counsel, the Court will proceed with considering Defendants' motion.

## Background

The following facts are taken from the Local Rule 56 statements of material facts and evidence cited by the parties.[1] The facts are read in the light most favorable to the non-movant, Ukanowicz. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court notes that Ukanowicz relies, in large part, on the allegations in his complaint. A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996); *see also* Fed. R. Civ. P. 56(c). The Court will consider Plaintiff's allegations as they provide context, but Plaintiff cannot create a genuine issue of material fact by relying on his allegations alone.

---

[1] For ease of reference, exhibits will refer to evidentiary exhibits included with the Defendant's Motion for Summary Judgment [Dkt. 72] and Plaintiff's Opposition [Dkt. 77] by exhibit only. i.e. [Def. Ex. A] and [Pl. Ex. 1]. Citation to the Defendant's. D. Conn. Civ. L. R. 56(a) statement is applicable where the parties agree as to the fact stated.

A. **Plaintiff's SRG designation and assault**

By way of background, Plaintiff entered DOC custody as a pre-trial detainee at the Bridgeport Correctional Center ("Bridgeport CC") in August of 2017. [Dkt. 61-1 (Second Am. Compl.) ¶ 8]. Shortly after, Plaintiff was designated as a member of a Security Risk Group ("SRG") associated with the Latin Kings street gang. [Second Am. Compl. ¶ 9]. Plaintiff argues that he was not a member of the Latin Kings. [Second Am. Compl. ¶ 10].

Plaintiff was transferred to Northern Correctional Institution ("Northern"), where he remained a pre-trial detainee. [Defs. 56(a) Statement ¶ 3]. Northern was a maximum-security prison that housed DOC's phased SRG gang-member unit. [Pl. Ex. 1 (Lizon Depo.) at 07:23-09:23, 11:02-11:25]. At Northern, inmate movement and communication were tightly controlled, particularly for inmates in the early phases of the SRG program. [*Id.*].

Capt. Lizon was the unit manager for high security gang members at Northern. [Pl. Ex. 1 (Lizon Depo.) at 07:06-08:03]. As the unit manager, he was responsible for all celling decisions. [*Id.* at 15:06-15:12]. Capt. Lizon testified that he knew that Ukanowicz was transferred from Bridgeport CC to Northern and that he was "in possession of some gang paperwork" that Capt. Lizon would have reviewed at the time. [*Id.* at 23:08-24:05]. He knew prison officials at Bridgeport CC previously denied Ukanowicz request to place him in protective custody. [*Id.* at 24:06-24:24]. Prison officials at Bridgeport CC told Capt. Lizon that Ukanowicz

claimed that he had an active hit on him. [*Id.* at 26:02-26:05]. Ukanowicz reiterated this information to Capt. Lizon during their initial conversation. [*Id.* at 29:15-29:23].

Capt. Lizon testified that Ukanowicz remained in a single cell until Ukanowicz requested to cell with Inmate Martinez. [*Id.* at 27:22-28:15]. Capt. Lizon knew that Martinez was a Latin King gang member. [*Id.* at 38:20-38:21]. According to Ukanowicz's declaration, he protested Martinez's transfer into his cell because he was concerned about his safety and he told custodial officers that he was supposed to remain on single cell status. [Pl. Ex. 2 (Ukanowicz Decl.)].

On December 27, 2017, almost immediately after the transfer, Martinez attacked Ukanowicz in their cell. [Def. 56(a)(1) Statements ¶¶ 6-7, 9]. When correctional staff responded to the intercom alert, they observed Ukanowicz on the cell floor and Martinez standing over him, punching him in the face repeatedly. [Defs. 56(a)(1) Statements ¶¶ 6-7, 9]. The responding officer called for a supervisor and medical staff. [Defs. 56(a)(1) Statement ¶ 8]. Once they arrived, Martinez was restrained, and medical attention was rendered to Ukanowicz. [Defs. 56(a)(1) Statements ¶¶ 10, 11-12]. Ukanowicz was taken to an area hospital. [Def. 56(a)(1) Statement ¶¶ 13]. He was discharged from the hospital the same day and from the prison's infirmary two days later. [Defs. 56(a)(1) Statements ¶¶ 13-15]. Sutures were applied to his facial area and a nasal fracture was treated; his left eye was swollen, and he had small abrasions on his right elbow. [Defs. 56(a)(1) Statement ¶ 14].

An investigation into the assault was conducted by Captain Sharp and Deputy Warden Molden, which found that staff followed proper protocol. [Def.

56(a)(1) Statement ¶ 18]. Capt. Lizon testified that Martinez told him that he assaulted Ukanowicz because he was directed to by a "shot-caller" for the Latin Kings. [Defs. Ex. 1 (Lizon Depo.) at 42:01-42:23]. He also testified that Martinez told him he was promised monetary compensation if he killed Ukanowicz. [*Id.*].

After the assault, Ukanowicz attempted to communicate with Warden Rodriguez when he would tour the cell block, but he had difficulty doing so because the warden was busy and there was no privacy. [Pl. Ex. 6 (Ukanowicz Depo.) at 25:12-26:02]. Instead, Ukanowicz relied on request forms to address issues, which he sought from correctional officers a few times per week. [*Id.* at 25:02-26:02]. Warden Rodriguez did not respond to Ukanowicz's concerns until March of 2018, when he came to Ukanowicz's cell with Capt. Lizon to apologize for the assault. [*Id.* at 49:21-50:21]. Ukanowicz testified that he was told that Capt. Lizon was transferring to the security division and had forgotten to place Ukanowicz on single cell status. [*Id.*]. Capt. Lizon also apologized to Ukanowicz. [*Id.* at 50:15-50:21].

### B. The DOC grievance process

DOC Administrative Directive 9.6 provides "means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority." [Def. Ex. C (Admin. Dir. 9.6, Eff. Aug. 15, 2013) ¶ 1].

Under these procedures, "[a]n inmate must attempt to seek formal resolution" prior to filing an inmate grievance. Admin. Dir. 9.6(6)(A). The inmate "may attempt to resolve the issue verbally with the appropriate staff member or with a

supervisor/manager." *Id.* If attempts to resolve the matter verbally are not effective, the individual must submit an Inmate Request on form 9601, addressed to the appropriate staff member and deposited in the collections box. *See id.* If the inmate does not receive a response to the written request within 15 business days or if he is not satisfied with the response to his request, he may file a Level 1 grievance. Admin. Dir. 9.6(6)(C).

The Level 1 grievance (form 9602) must be filed within 30 calendar days from the date of "…the occurrence or discovery of the cause of the grievance." *Id.* The inmate must include a copy of the response to the Inmate Request (form 9601) or explain why the response is not attached. *See id.* The completed 9602 form and accompanying documents must be deposited in the Administrative Remedies box. *Id.* The Unit Administrator shall respond in writing to the Level 1 grievance within 30 business days of their receipt of the grievance. Admin. Dir. 9.6(6)(I).

The inmate may appeal the disposition of the grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2. Admin. Dir. 9.6(6)(G), (I) & (K). The Level 2 appeal of a disposition of a Level 1 grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. Admin. Dir. 9.6(6)(K). The Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within 65 days from the date the inmate filed the Level 1 grievance. Admin. Dir. 9.6(6)(M). Level 2 appeals by inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator. Admin. Dir. 9.6(6)(K). The District Administrator is required to

respond to the Level 2 appeal within 30 business days of receipt of the appeal. *See id.*

Level 3 appeals are limited to challenges to department-level policy, the integrity of the grievance procedure, or if the Level 2 grievance response was untimely. Admin. Dir. 9.6(6)(L). A Level 3 appeal must be filed within five calendar days from the prisoner's receipt of the decision on the Level 2 appeal. *See id.* A Level 3 appeal of the District Administrator's failure to dispose of the Level 2 appeal in a timely manner must be filed within 35 days of the filing of the Level 2 appeal. Admin. Dir. 9.6(6)(M). A Level 3 appeal is reviewed by the Commissioner of Correction or their designee. Admin. Dir. 9.6(6)(L).

### C. Plaintiff's administrative requests and grievances

Jaclyn Saunders was the Administrative Remedies Coordinator at Northern and was the keeper of records for grievances, grievance appeals, and grievance logs. [Def. 56(a) Statement ¶ 30]. At Northern, inmates filed their Level 1 and 2 grievances in a designated "Administrative Remedies" box, which was marked and accessible to inmates. [Def. 56(a)(1) Statement ¶ 28].

Ukanowicz denies that the Administrative Remedies box was accessible because Capt. Lizon testified that the only time inmates at Northern were not fully restrained was when they were in their cells. [Dkt. 82 (Pl. 56(a)(2) Statement), obj. to ¶ 28](citing Pl. Ex. 1 (Lizon Depo.) at 11). However, the fact that inmates in the SRG program at Northern were restrained when they were outside of their cells does not render the grievance box inaccessible. For example, the parties agree that

Ukanowicz filed eleven Level 1 grievances and five Level 2 grievances while he was housed at Northern in 2017. [Def. 56(a)(1) Statement ¶ 31]. Ukanowicz does not allege that he was ever denied the ability to deposit a Level 1 or Level 2 grievance in the Administrative Remedies box.

Ukanowicz argues that inmate request forms addressing issues related to his assault were not collected or appropriately maintained by Northern. [Pl. 56(a)(2) ¶ 4]. Ukanowicz submitted an affidavit attesting that between December 27, 2017 and January 27, 2017, "numerous inmate request forms were sent to staff such as Captain Lizon [and] Security Risk Group Coordinator John Aldi regarding an incident that had taken place on December 27, 2017." [Pl. Ex. 4 (Ukanowicz Aff.) ¶ 4]. Ukanowicz filed copies of six inmate requests (form 9601), none of which are contained on the grievance log. *Compare* [Pl. Ex. 4 (Ukanowicz Aff. and accompanying 9601 forms)] *to* [Def. Ex E (Grievance Logs)]. The Court will address each of Ukanowicz's inmate requests and grievances.

On January 6, 2018, Ukanowicz submitted an Inmate Request to Capt. Lizon inquiring about why he was moved from single cell status after their discussion about the "problems [Ukanowicz] was having with his affiliation" and after Capt. Lizon told him he would not be moved. [Pl. Ex. 4 at 7].

Ukanowicz submitted another Inmate Request to Capt. Lizon on January 14, 2018 about a medical bill he received for his hospitalization. [Pl. Ex. 4 at 9]. In the inmate request form, he blamed Capt. Lizon for his injuries. [*Id.*]

Of Ukanowicz's seven inmate requests from early 2018, the remaining five seek records pertaining to his SRG classification or assault:

- On January 2, 2018, Ukanowicz requested a copy of the incident report and the photographs taken of his injuries. [*Id.* at 4];
- On January 8, 2018, Ukanowicz requested a copy of the denial of his protective custody request dated September 28, 2017 and his classification sheet. [*Id.* at 8];
- On January 21, 2018, Ukanowicz requested his medical file, hydrocortisone cream, nasal spray, and a sick call because his hands were going numb. [*Id.* at 6];
- On January 22, 2018, Ukanowicz requested a copy of the video of the incident. [*Id.* at 5]. This request was denied on the basis that he needed a court order to view or receive the video. [*Id.*]; and
- On February 12, 2018, Ukanowicz requested all emails pertaining to his SRG classification and copies of all of the grievances he filed at Bridgeport CC. [*Id.* at 10].

Following the assault, Ukanowicz also wrote to the SRG coordinator, John Aldi, and others in late December 2017 and January 2018 seeking to resolve his SRG designation. [Pl. 56(a)(2) ¶ 1](citing Pl. Ex. 3 (Jan. 25, 2018 Ltr. from Aldi to Ukanowicz](responding to Ukanowicz's letter dated Jan. 15, 2018 concerning his SRG designation)).

On February 28, 2018, Ukanowicz filed two Level 1 grievances concerning the SRG program. The first, 141-18-177, requests a six-month review of his SRG status pursuant to Administrative Directive 6.14. [Defs. Ex. D. at 1-3]. The grievance does not reference the assault, the denial of his protective custody request, or Capt. Lizon's celling decision. See *id.* The grievance was denied on March 23, 2018 on the basis that his request for an SRG designation review was premature. [*Id.* at 6].

Ukanowicz filed another Level 1 grievance on February 28, 2018, which addresses his claims regarding the assault. [Def. Ex. D at 10 (IGP # 141-18-181)].

That grievance states that he is:

[F]iling this grievance on the Security Risk Group Program for failing to disclose the physical risk that I would be subjected to by having any participation in the Security Risk Program. No one warned me, no correctional staff, or administrators of the Security Risk Program of potential harm, physical damage or violence I would possibly encounter. I was never informed on any forms or documents of such violent environments or situations.

[Defs. Ex. D. at 10](141-18-181).

On April 6, 2018, Level 1 Grievance (141-18-181) was returned without disposition on the basis that Plaintiff did not attempt informal resolution and did not provide a requested action or resolution as required by Admin. Dir. 9.6(6)(E). [*Id.* at 8]. Ukanowicz did not appeal this decision. [Defs. Ex. E at 3 (Level 2 Grievance Log)(omitting 141-18-181).

On March 13, 2018, Ukanowicz filed two additional Level 1 grievances (141-18-187) and (141-18-188). [Defs. 56(a) Statement ¶¶ 36-37]. Neither grievance is relevant. About a week later, Ukanowicz filed another Level 1 grievance (141-18-200), which contested the fee for legal copies and was compromised a month later. [Defs. 56(a) Statement ¶ 38].

On March 22, 2018, Northern received another Level 1 grievance (141-18-202), which related to the rejection of an earlier grievance. [Defs. 56(a) Statement ¶ 39]. The grievance was denied on April 25, 2018. [*Id.*].

Northern received another Level 1 grievance (141-18-207) five days later. [Defs. 56(a) Statement ¶ 39]. The grievance contested the SRG group's admission and designation procedures, specifically whether the program is voluntary. [Defs. Ex. D at 30]. The grievance was denied on April 26, 2018. [*Id.*]. The denial was accompanied by letters from A. Santiago, Director of Security, and the SRG coordinator. [*Id.* at 30-33].

On March 29, 2018, Northern received another Level 1 grievance (141-18-208). [Defs. 56(a) Statement ¶ 41]; [Defs. Ex. D at 36]. This grievance alleges that on the day of the assault, Ukanowicz was improperly placed in a cell with another SRG member without signing an acknowledgement form. [*Id.*]. On March 29, 2018, it was rejected as untimely pursuant to Admin. Dir. 9.6(6)(C) because the grievance was not filed within 30 calendar days of the occurrence or discovery of the cause of the grievance. [*Id.*]. Ukanowicz filed a corresponding Level 2 grievance on April 10, 2018. [Defs. 56(a) Statement ¶ 43]; [Defs. Ex. D at 38]. The Level 2 grievance was rejected a week later because the Level 1 grievance was untimely. [*Id.*].

Ukanowicz filed a separate Level 1 grievance (141-18-209) on March 26, 2018, which contested a September 5, 2017 designation hearing. [Defs. 56(a) Statement ¶ 44]; [Defs. Ex. D. at 41]. This grievance was rejected as untimely three days later. [*Id.*]. Ukanowicz filed a corresponding Level 2 grievance on April 12, 2018, which was rejected on the same basis. [Defs. 56(a) Statement ¶ 45]; [Defs. Ex. D. at 43].

Ukanowicz filed another Level 1 grievance on April 20, 2018 (141-18-237), which contested the SRG designation form's use of the term "advocate" instead of

"advisor." [Defs. 56(a) Statement ¶ 46]. That grievance and a corresponding Level 2 appeal were denied because the revision to the directive did not change the policy or effect the disciplinary procedure. [Defs. 56(a) Statement ¶ 47]; [Defs. Ex. D. at 45](Level 2 disposition).

On May 2, 2018, Northern received another grievance (141-18-259) from Ukanowicz regarding the denial of his initial protective custody request when he was detained at Bridgeport CC. [Defs. 56(a) Statement ¶ 48]; [Defs. Ex. D. at 50]. The grievance was denied on the basis that neither the Bridgeport CC intelligence lieutenant nor the SRG program coordinator had "any information that would warrant a proactive custody status placement," and his second request for protective custody was granted in May 2018, resulting in his transfer. [*Id.*]. Ukanowicz appealed the disposition, which was denied. [Defs. 56(a) Statement ¶ 48]; [Defs. Ex. D. at 52].

Plaintiff admits that the grievance logs from the relevant time period reveal that the only grievances or grievance appeal filed by Plaintiff are those discussed above. [Defs. 56(a) Statement ¶ 50](admitted).

<u>Analysis</u>

A. <u>Legal Standard</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse*, 611 F.3d

98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

This means that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); *see Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-00481, 2004 WL 2472280, at *4 (D. Conn. Oct. 20, 2004) ("At the summary judgment stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient.") (citing *Gottlieb*, 84 F.3d at 518); *Martinez v. Conn. State Library*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011). Put another way, "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

B. <u>Parties' Arguments</u>

Defendants argue that they are entitled to summary judgment because the only relevant grievance (141-18-208) was filed over 60 days beyond the prescribed time limitation. [Defs. Mem. in Supp. at 10-16]. Defendants argue that Ukanowicz

cannot create a disputed issue of fact to overcome summary judgment. [*Id.* at 15-16].

In opposition, Ukanowicz argues that he exhausted his administrative remedies or, alternatively, that the grievance process was not "actually available." [Pl. Mem. in Opp'n at 12-16].

Ukanowicz argues that between December 27, 2017 and January 27, 2017, he was awaiting responses to his inmate requests from prison officials and was gathering information. [Pl. Mem. in Opp'n at 12-13]. He notes that several of his inmate requests related to the December 27, 2017 assault were not produced in discovery and were not part of the DOC's master file. [*Id.* at 15].

Ukanowicz further argues that the DOC's grievance procedure is defective insofar as it lacks a mechanism to extend the deadline for filing a grievance. [*Id.* at 14](citing *Williams v. Priatno*, 829 F.3d 118 (2d. Cir. 2016)).

Relatedly, he argues that the grievance procedure, while formally on the books, "operated as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" as well as was "so opaque that it [became], practically speaking, incapable of use," such that "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." [*Id.* at 16]. He argues that Admin. Dir. 9.6(6)(c) is unclear regarding the interplay between the timing for seeking informal resolution and for submitting a grievance. [*Id.* at 14]. In other words, Ukanowicz argues that it is unstated in the grievance procedure whether the time to seek informal resolution, as required by

Admin. Dir. 9.6(6)(A), defers the 30-day period for filing the grievance itself. [*Id.* at 12-13].

Ukanowicz argues that he suffered from anxiety, nausea, light-headedness, dizziness, vision abnormalities and blurriness that made it difficult for him to read and write, which affected his ability to file a timely grievance. [*Id.* at 14].

Finally, Ukanowicz argues that to find that he did not exhaust administrative remedies "… would allow the Defendants to arbitrarily narrow the timelines in their own grievance process, as well as allow procedure (which form the information was communicated on) to trump substance (the nature of the claim)." [*Id.* at 16](parenthetical in original).

In reply, Defendants argue that Plaintiff's alleged submission of inmate requests does not establish that he exhausted available administrative remedies because it is only the first step in the grievance process. [Defs. Repl. Br. at 4]. They further argue that the grievance procedure contemplates that an inmate may not receive a response to an informal request within the 15-day business period prescribed by the grievance procedure and can proceed to the next step accordingly. [*Id.* at 5-7]. They argue that the contemplation of a procedure by which an inmate can appeal or escalate unanswered inmate requests and grievances distinguishes this case from *Williams*. They further argue that Plaintiff's suggestion that his physical capacity was impaired following the assault is refuted by the numerous inmate requests that he filed during the 30-day period following the assault. [*Id.* at 7].

## C. Discussion

The PLRA provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under § 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In enacting § 1997e, Congress sought to afford prison officials time and opportunity to address complaints internally and reduce the quantity, and improve the quality, of prisoner suits. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). This subsection applies to all claims regarding prison life. *See id.*, 534 U.S. at 532. Section 1997e requires exhaustion of any available administrative remedies, regardless of whether they provide the relief the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim is not exhausted until the inmate complies with all administrative deadlines and procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

In *Woodford*, the Supreme Court interpreted the PLRA to require "proper exhaustion." 548 U.S. at 87-103. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. "An 'untimely or otherwise procedurally defective administrative grievance' ... does not constitute proper exhaustion." *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011) (quoting *Woodford*, 548 U.S. at 83-84). What is also significant here is that a prisoner cannot escape the procedural exhaustion requirement by proving that

prison officials were on notice of the plaintiff's substantive claims. *Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

Failure to exhaust administrative remedies is an affirmative defense. *Jones v. Block*, 549, U.S. 199, 216 (2007). Defendants bear the burden of proving non-exhaustion. *See Paschal-Barros v. Kenny*, No. 3:18-CV-1870 (VLB), 2019 WL 2720739, at *3 (D. Conn. June 28, 2019). "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015)

The Supreme Court has identified three circumstances in which an administrative remedy is "unavailable" within the meaning of the PLRA's textual exception to proper exhaustion: "(1) the administrative remedy may operate as a 'dead end,' such as where the office to which inmates are directed to submit all grievances disclaims the ability to consider them ... [ (2) ] the procedures may be so confusing that no ordinary prisoner could be expected to 'discern or navigate' the requirements ... [a]nd [ (3) ] prison officials may 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' " *Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016).

The Court agrees with the Defendants that: (1) Ukanowicz failed to exhaust available administrative remedies and (2) none of the recognized exceptions to proper exhaustion under *Ross* are applicable.

As discussed at length above, the parties agree that Ukanowicz filed eleven grievances and five grievance appeals. Defendants argue that only one Level 1

grievance (141-18-208) and the corresponding Level 2 grievance relate to Plaintiff's Fourteenth Amendment claim. [Defs. Mem. in Supp. at 12, 14-15]. Plaintiff argues that the "issues remaining in this case" include Plaintiff's erroneous designation to the Latin Kings SRG, which was addressed in grievances filed on February 28, 2018, March 27, 2018, and May 2018. [Dkt. 82 (Pl. 56(a)(2) Statement), obj. to ¶ 32]. While Plaintiff's framing of the issue is overinclusive, the Court agrees that one of the grievances filed on February 28, 2018 is relevant.

Plaintiff's sole remaining claim is that Capt. Lizon and Warden Rodriguez were deliberately indifferent to his safety because they failed to protect him from an assault by a known gang member on December 27, 2017, in violation of the Due Process Clause of the Fourteenth Amendment. *See generally* [Dkt. 64-1 (Second. Am. Compl.)]. Therefore, the date of "…the occurrence or discovery of the cause of the grievance" is December 27, 2017. By the plain language of the grievance procedure, the latest Ukanowicz could have filed a Level 1 appeal regarding the assault was January 26, 2017. Admin. Dir. 9.6(6)(C). Plaintiff's arguments to the contrary are unavailing.

First, Ukanowicz was aware of the circumstances of the assault and knew that his prior request for protective custody was denied. According to his affidavit, he protested Capt. Lizon's celling decision immediately prior to the assault. Thus, the information he sought in the unanswered inmate requests concerning his SRG designation was unnecessary for Ukanowicz to "discover the cause of the grievance."

Second, the only relevant inmate request pertaining to the assault was appropriately filed on January 6, 2018. *Supra*. 10. Construing ambiguity in favor of Plaintiff, the earliest grievance pertaining to the assault was filed on February 28, 2018, which concerned his claim that he was not informed about the risk to his physical security associated with his SRG designation. [Defs. Ex. D at 10 (141-18-181)]. As discussed above, 141-18-181 was returned without disposition because Plaintiff did not attempt informal resolution and did not provide a requested action or resolution as required by Admin. Dir. 9.6(6)(E). *Supra*. 12.

The Level 1 grievance form (9602) directs the grievant to "[a]ttach a copy of CN 9601, Inmate Request Form, with the staff members response OR state in Section 4 the reason the form is not attached." *See, e.g.* [Defs. Ex. D. at 9 (Level 1 grievance 141-18-181)(capitalization and underlining in original). This language is significant in a few respects. First, it reiterates to the grievant that inmate requests and formal grievances are not functional equivalents. Second, it makes clear that the grievant is responsible for adequately explaining their attempt to informally resolve the matter, rather than placing the onus on prison officials to cross check submitted grievances with inmate requests. Thus, even though Plaintiff attempted to resolve the matter informally in January 2018, he needed to explain that on the grievance form.

Finally, even if the 30-day deadline for filing the Level 1 grievance began to run 15 business days after the Inmate Request was filed (i.e. January 26, 2018), Plaintiff's Level 1 grievance was still untimely as it was filed 33 calendar days later. Apart from its untimeliness, Plaintiff did not appeal the disposition of this

grievance or re-file it with a requested resolution or a demonstration that he attempted informal resolution. *See* [Def. Ex. E at 7 (Level 2 Grievance Log)].

It is well established that the PLRA requires "proper exhaustion" of administrative remedies, meaning exhaustion in "compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. Here, there is no dispute that Plaintiff failed to exhaust administrative remedies as set forth in the DOC's grievance policy. The remaining issue is whether these remedies were functionally "unavailable" to Plaintiff within the PLRA's textual exception to the proper exhaustion requirement. *See Ross*, 136 S. Ct. at 1859-60.

Plaintiff cites to *Williams v. Priatno*, 829 F.2d 118 (2d Cir. 2016) to support his contention that the administrative remedies were unavailable to him. [Pl. Mem. in Opp'n at 12]. The Court agrees with Defendants that *Williams* is distinguishable. In *Williams*, the inmate-plaintiff was beaten by correction officers and alleged that a correction officer failed to file the grievance on his behalf. 829 F.3d at 120. Following *Ross v. Blake*, the Second Circuit held that New York state prison system's grievance process was "opaque" and thus "unavailable" because there was no obvious mechanism to appeal an unfiled grievance. *Id.* at 124.

In contrast, "… each step of the [DOC's] grievance process, contemplates, in unequivocal terms, appeals of grievances that may have gone unfiled and, in turn, could go unanswered." *Osborn v. Williams*, No. 3:14-CV-1386 (VAB), 2017 WL 6731714, at *5 (D. Conn. Dec. 29, 2017), *aff'd*, 792 F. App'x 88 (2d Cir. 2019), *as amended* (Dec. 11, 2019). Here, Admin. Dir. 9.6(6)(C) contemplates that if an inmate

does not receive a response to their inmate request within 15 business days, then the inmate can proceed with filing a Level 1 grievance. As detailed above, the procedures further contemplate escalation of unanswered grievances up to review by the Commissioner of the DOC or their designee.

Here, Ukanowicz does not claim that he ever requested an extension or asked for assistance with filing the grievance. *See* Admin. Dir. 9.6.5(b)(1)("[a]ny inmate who needs assistance in using the Inmate Administrative Remedies Process shall receive assistance upon request.").[2] There was no structural or functional obstacle that prevented Ukanowicz from meeting that 30-day deadline. In other words, the grievance procedure was available to Ukanowicz because he could have filed a Level 1 grievance by January 26, 2017 without waiting for the response to his inmate request and without the need for an extension.

Plaintiff argues that his physical condition following the assault factored in his failure to meet the applicable deadlines. *See* [Pl. Mem. in Opp'n. at 14]. Neither party cites legal authority concerning whether diminished physical capacity can render administrative remedies unavailable. *But see Osborn*, 792 F. App'x at 90 (2d Cir. 2019), *as amended* (Dec. 11, 2019), *cert. denied*, 140 S. Ct. 2539 (2020) (noting

---

[2] Of note, pursuant to Admin. Dir. 9.6(6)(J), " . . .A grievant may request a time extension of up to 15 calendar days to file an appeal by sending a written CN 9601, Inmate Request Form, to the Administrative Remedies Coordinator. A request by the grievant may be granted at the discretion of the reviewer to whom the appeal is to be sent." Whether Admin. Dir. 9.6(6)(J) permits the extension of the deadline for filing a Level 1 grievance was not briefed by the parties.

that the issue of whether mental illness can render an administrative remedy unavailable under *Ross* is an open question in the Second Circuit).

The Court need not decide that issue here, although a severe physical or mental condition which rendered the inmate incapable of filing a grievance could conceivably justify an extension of the deadline to file a grievance for a reasonable period of time not prejudicial to the respondent, but not eliminate the requirement. Assuming without deciding that diminished physical capacity could obviate the requirement to properly exhaust administrative remedies, Ukanowicz injuries did not render the grievance procedure unavailable.

The sealed medical records filed in opposition to summary judgment show that he was discharged from the prison's infirmary two days after the assault with "… sutures intact, no complaints with vision, headaches or nausea, no other complaints voiced, no new injuries noted." [Dkt. 79 (Dec. 29, 2017 Med. Incident Report)]. Subsequent medical records from February and April 2018 show that he continued to complain about blurry vision. [*Id.* at 1 (Feb. 2, 2018, Health Consult)]; [*Id.* at 4 (Apr. 12, 2018, Med. Note)]; [*Id.* at 5 (Clinical Record)](summarizing sick calls). Nothing in the medical records suggest that Ukanowicz was physically unable to file a grievance within 30 days of the assault. His assertion is also contradicted by the fact that he filed six inmate requests within this period. Additionally, if his physical capacity inhibited his ability to file the grievance, he would have been entitled to assistance upon request. *See* Admin. Dir. 9.6(5)(b)(1).

Finally, Ukanowicz's argument that the proper exhaustion requirement places form above substance is unavailing. [Pl. Mem. in Opp'n at 16]. It is well established that a prisoner must demonstrate "procedural exhaustion," and therefore informal attempts to alert prison officials to claims is insufficient to establish "proper exhaustion" under *Woodford*. *Macias*, 495 F.3d at 44. "Prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (internal quotation marks and citation omitted). Plaintiff does not cite any intervening change in controlling authority.

Accordingly, the Court concludes that Plaintiff failed to properly exhaust available administrative remedies as required by 42 U.S.C. 1997e(a) as to the sole remaining claim. The Court must dismiss the Complaint in its entirety.

## Conclusion

For the above-mentioned reasons, Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's Second Amended Complaint is DISMISSED. Because the Court finds that Ukanowicz failed to exhaust administrative remedies, the Court need not address Warden Rodriguez's arguments that he is entitled to qualified immunity and that Ukanowicz fails to state a claim. The Clerk shall enter judgment and close this case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: June 30, 2021